## Canty's Estate

*Charles G. Brevillier* and *Charles P. Hewes*, for appellant.

*George M. Mason*, contra.

WAITE, P. J., September 14, 1934.—Anna Canty died testate on July 5, 1933. Her will was duly probated and letters testamentary issued to her sister, Mrs. Frances Canty Delaney, by the Register of Wills of Erie County, Pa. The executrix filed a first and final account on April 27, 1934, charging herself with stock, bond, interest and dividends amounting to $17,640.60 and claiming credit for various expenses amounting to $1993.11, leaving securities in the amount of $16,198.25 to be distributed in kind to her brother and two sisters, legatees under her will.

From the testimony it appears that the decedent was born in the City of Erie and lived here for some time as a child, and then moved with her parents to another State, afterwards returning with them to Erie, where she lived until she left to enter upon her duties in connection with hospitals in various cities in the United States and Canada. She inherited an interest in the family home on West Ninth Street, which she subsequently sold to her sister residing in Erie, in 1923 or 1924. While decedent was employed in Canada she purchased a farm which she sold in 1906. It does not appear that she ever resided on the farm. Decedent was superintendent of three hospitals in Canada for 8 years, beginning in 1908. She was afterwards located in Piqua, Ohio, for about 5 years and in Chicago for 1 or 2 years. In 1930 she came to Erie and lived with her sister until her death in 1933, except for a short period in the winter of 1932, which she spent in Florida. Prior to coming to Erie in 1930 the decedent had rented an apartment in Niagara Falls, Ontario. The evidence does not disclose for how long a period she maintained said apartment. After coming to Erie she gave up the lease of said apartment and stored part of her furniture in Niagara Falls. What subsequent disposition was made of this furniture does not appear, but we conclude it was disposed of, as no reference is made to it in the account of decedent's estate.

The only surviving heirs at law of decedent are two sisters, one residing in Chicago, and the other in Erie, and a brother residing in New York. The will, executed in Erie on February 27, 1926, gives the residence of the testatrix as the City of Erie, County of Erie and State of Pennsylvania. A codicil was executed in Erie on November 4, 1932 and names the sister, Frances Canty Delaney, residing in Erie, and the brother, Frank J. Canty, residing in New York, as executors. The sister alone made proof of death, wherein she made affidavit that Anna Canty, the deceased, was a resident of the City

of Erie and the said sister, Frances Canty Delaney alone qualified as executrix. As no objection has been noted, we conclude that the other sister and the brother have concurred in the administration and distribution of the estate, under the laws of the Commonwealth of Pennsylvania.

The estate, after the payment of all indebtedness, including funeral expenses and costs of administration, consists of securities, stocks, bonds and mortgages having a value of $16,189.25, as shown by the account, all of which was kept in a bank in the City of Erie.

The question for determination is whether the estate of the decedent, all of which passes to the brother and sisters of the decedent, is subject to the collateral inheritance tax now claimed by the Commonwealth of Pennsylvania. The claim of the Commonwealth must be sustained if the decedent was a resident of Pennsylvania at the time of her death. The only evidence to the contrary is that of the surviving sisters, both of whom testify that the deceased had rented an apartment in Niagara Falls for the purpose of making her home near the sister, Mary L. Canty, who resided there at the time; that she gave up this apartment and stored her furniture there and came to Erie to visit her sister, Frances Canty Delaney, whom she subsequently nursed during an illness; and that deceased stated she was not and did not intend to become a resident of Pennsylvania. This testimony is in conflict with the decedent's declaration of residence in the will, and with the affidavit of the sister, Frances C. Delaney, in the probate, giving the residence of the decedent as Erie, Pa. It is also in conflict with the fact that the decedent left Niagara Falls, Ontario, in 1930, subsequent to which time she resided in Erie up to the time of her death, except for a short time during the winter of 1932 which she spent in Florida. It is also to be remembered that some time subsequent to the time that decedent rented the apartment in Niagara Falls to be near her

sister Mary, that sister moved to Chicago, where she still resides, so that the reason for the decedent making her residence in Niagara Falls no longer existed. The codicil was a reaffirmance of the will showing decedent's residence in Erie, Pa. While the residence set forth in the will and reaffirmed in the codicil is not conclusive, yet being signed and executed by the testatrix in the formal and solemn manner required in the execution of a last will and testament, it is in our opinion entitled to at least as much weight as decedent's declarations made to her sisters, as to her intended residence. Whatever decedent's intention may have been, the actual fact is that the only domicile she had after leaving Niagara Falls in 1930 was in Erie, Pa. "That actions speak louder than words is sound law as well as proverbial wisdom": Graham v. Dempsey, 169 Pa. 460, 462. "More weight will be given to a person's acts than to his declarations, and when they are inconsistent the acts will control": 19 C. J. 440. "A declaration [as to domicile] that is self-serving and not followed by acts in accordance with the declaration will not be regarded as conclusive, but will yield to the intent which the acts and conduct of the person clearly indicate": Paris' Estate, 107 Misc. Rep. 463, 469, 176 N. Y. Supp. 879, 882. "Every person must have a domicil somewhere and a man cannot elect to make his home in one place for general purposes of life, and in another place for the purposes of taxation": Feehan v. Tax Commissioner, 237 Mass. 169, 171. See also Dorrance's Estate, 309 Pa. 151.

That decedent actually lived in Pennsylvania for a period of over 3 years immediately preceding her death, is an undisputed fact; that she was a resident of Pennsylvania was verified by the proof of death made by the sister subsequently appointed executor of her estate. It was then incumbent upon the heirs to rebut the presumption arising therefrom, by satisfactory proof that decedent's residence was in Niagara Falls, as alleged, or that

the Pennsylvania residence was intended merely for a temporary purpose. That burden under all the evidence showing the acts, as well as the declarations of the decedent, in our opinion they have failed to meet. We therefore conclude that decedent was at the time of her death a resident of Pennsylvania and that her estate passing to her brother and sisters, is subject to the Pennsylvania collateral inheritance tax law.

Even if the decedent was a nonresident of Pennsylvania, the fact that her will was probated here, not by ancillary, but by original letters testamentary and that her estate is being administered here under the laws of Pennsylvania, with the concurrence of all the interested parties as we have already shown, would make the estate subject to the inheritance tax laws of the Commonwealth. In Galli's Estate, 21 Dist. R. 763, it is held that where distribution of an estate is asked within and under the laws of this Commonwealth, the personal property of a foreign decedent is liable for collateral inheritance tax. And in de Noailles' Estate, 21 Dist. R. 25, it is held that the liability of the personal property of a foreign decedent for collateral inheritance tax depends upon distribution being asked within, and under, the laws of the Commonwealth. Mr. Justice Brown, affirming the decision in the above case, upon appeal, under the name of Countess de Noailles' Estate, 236 Pa. 213, at page 216 says:

"Lewis's Estate, 203 Pa. 211, is also pressed upon us as a controlling authority for the Commonwealth, and it is proper that we should show it is not. We have heretofore said of it that it was decided upon its own peculiar facts and is not to be stretched: Shoenberger's Estate, 221 Pa. 112. One of the two reasons given by the court below in Lewis's Estate for holding that it was liable to collateral inheritance tax here was that, as the executor and legatees had requested and consented that a complete

administration and distribution of the whole estate comprehended in the account should be had in Luzerne county, under Pennsylvania laws, by a Pennsylvania court, and not as is usual in mere ancillary accounting, transmitted to a foreign forum, they could not have the benefit of this departure from the general rule without taking that benefit with its burdens. It was for this reason that the decree was affirmed."

The above language is quoted and approved in Easby's Estate, 285 Pa. 60, at page 65, cited and relied upon by the attorneys for the executrix in the instant case. In Harding's Estate, 12 D. & C. 633, also cited and relied upon by the attorneys for the executrix, in the case now before us, the decedent was a resident and died in England. It is otherwise distinguishable from and not a precedent controlling the instant case.

We therefore conclude for both of the reasons above stated, the balance of this estate for distribution to the brother and sisters of the decedent is subject to the Pennsylvania collateral inheritance tax law and the executrix is directed to make payment thereof before making distribution to the legatees.